CASE No. 1118.

McINTYRE *v.* McINTYRE.

1. The intention of the testator must prevail when not in conflict with some rule of law.
2. In this State, the rule in *Shelley's Case* does not apply, where the word *issue* after a precedent life-estate is so qualified by additional words as to evince an intention not to use "issue" in the sense of an indefinite line of descent.
3. Lands were devised to A. for life and after her death to be equally divided between her children, to be held by them for life, and after their death *to the issue of them and their heirs forever. Held,* that the children of A. after her death took a life-estate with remainder in fee to their immediate issue as purchasers.

---

Before ALDRICH, J., Marion, November, 1880.

This was an action by George A. McIntyre and others, children of Archibald McIntyre, deceased, (the testator,) against

Robert C. McIntyre and others, children of testator. All the children of testator's children were parties defendant. Archibald McIntyre executed his will April 28th, 1850, and died within a month afterwards. The widow of testator died in February, 1880. Soon afterwards, the plaintiffs brought this their action for a partition of the lands of testator, but doubts having been entertained as to the right of testator's children to an absolute estate in this property, the grandchildren were made parties, and a construction of testator's will asked for. The entire will is given in the opinion of this court, and other facts are stated therein.

*Mr. W. W. Harllee,* for appellants, cited and commented on the cases to be found in *Bailey Eq.* 541; 1 *Hill Ch.* 268; 2 *Id.* 198 7 *Rich. Eq.* 407; 1 *Bro. Ch. C.* 206; 2 *Strange* 1125; 7 *T. R.* 531; 2 *Spears* 793; 1 *Strobh. Eq.* 344; 3 *Rich. Eq.* 559; 1 *Id.* 407; 2 *Hill Ch.* 244; 10 *S. C.* 58; 6 *Rich.* 26. Also, 4 *Kent* 219–230; *Fearne Rem.* 119, 134. Mr. Fearne on page 118, is not sustained by the authorities cited.

*Mr. C. D. Evans,* contra, cited some of the same authorities, and, also, 4 *Rich Eq.* 428, 439.

November 21st, 1881. The opinion of the court was delivered by

McIVER, A. J. Archibald McIntyre, having duly made and executed his last will and testament, departed this life in May, 1850, leaving his widow and nine children named in his will surviving, another child having been born soon after his death. All of these children now have issue living, one of them having had issue born since the commencement of these proceedings. The testator left a very considerable real and personal estate, which he disposed of as follows: "I give, devise and bequeath, after the payment of my just debts, to my well-beloved wife, Sophia McIntyre, for the term of her natural life, all my property, real and personal, to wit: [Here follows a description of the property.] To have and to hold all the said property, real and personal, and the increase thereof, for the term of her

natural life; and from and immediately after her decease to my children now living, Matilda, Richard, Robert, Duncan, George, Rebecca, Archibald, Joseph, Sarah, and one in process of being, but not yet born, should the same live after its birth, likewise for the term of their natural lives, and to be divided among them share and share alike, the children of deceased parents representing such deceased parents and taking his or their share only; and, finally, upon the decease of my said children now living, and that now in process of being, to the issue of them and their heirs forever. *Item.* And I do hereby appoint my well-beloved wife, the said Sophia McIntyre, the executrix of this my last will and testament. I do. hereby authorize, direct and empower my said executrix to keep my estate, real and personal, together, and to manage and improve the same during her natural life, that it may pass at her death into the hands of my said children, the life-tenants after her, and descend to their heirs in an improved and accumulated condition. And, finally, all the rest and residue of my estate and effects, real and personal, whatsoever and wheresoever, not herein disposed of, after payment of my debts and legacies, and funeral expenses and other charges, I do give, devise and bequeath, in manner and form, upon the same limitations and to the same parties aforesaid."

The widow took possession of all the property as executrix and tenant for life, and remained in possession until her death in February, 1880. After the death of the testator, but before the death of the widow, two of the sons named in the will, Richard and Archibald, died, each leaving one child: Richard leaving a son named Richard H., and Archibald leaving a son also named Archibald.

There is no controversy as to the disposition of the personal property, satisfactory provisions for its distribution having been made, and the only question is as to the real estate—or rather the proceeds thereof—it having been sold under an order granted in these proceedings, which directs that the proceeds be held subject to the order of the court.

The Circuit judge held that under a proper construction of the will of the testator each of his children took an estate for life in the realty, with remainder to their children in fee, and directed

that when the master shall collect the bonds given to secure the purchase-money of the real estate, he shall invest the same in bonds bearing interest payable annually, which interest shall be paid to the life-tenants, and that the *corpus* be paid to the tenants-in-fee, or their guardians, as the life-estates determine. From this judgment the plaintiffs and certain of the defendants appeal upon two grounds: *First.* Because of error in the construction of the will, the appellants claiming that, by a proper construction of the will, the children of the testator take a fee-conditional and not a life-estate in their shares of the realty. *Second.* Because Richard H. and Archibald McIntyre, the two children of the deceased sons, take an absolute estate in fee-simple by the express terms of the will, and, therefore, the judgment of the Circuit Court must, in any view of the question, be so modified as to give them at once their shares of the *corpus* absolutely.

There is no doubt that the rule in construing a will is that the intention of the testator must govern, unless such intention is in conflict with some rule of law. In this case, we suppose there is as little doubt that the testator only intended to give his children a life-estate, for he says so in express terms in the direct gift to them, and, in a subsequent part of his will, speaks of his children as life-tenants.

But this is not conclusive, for if this manifest intention comes into conflict with a well-settled rule of law, it cannot be carried into effect, but the intention must give way to the rule of law. The appellants contend that this intention of the testator comes into conflict with a rule of law which has been so long and so firmly settled as to entitle it to be called a rule of property, which is familiarly known as the rule in *Shelley's Case.* Without entering into a consideration of the origin of this rule or the reasons upon which it was originally founded, it is sufficient for us to say that by that rule it is well settled that where there is a devise to A. for life, and, at his death, to his issue, the limitation to the issue serves only to enlarge the estate of A. to a fee-conditional, and does not create a remainder to the issue as purchasers, notwithstanding the manifest intent to the contrary. *Whitworth* v. *Stuckey,* 1 *Rich. Eq.* 404, and the cases therein cited. So, that if, in this case, the devise were to the children

of the testator " for the term of their natural lives," and, at their decease, " to the issue of them," with nothing more, then, clearly, an estate in fee-conditional would have been created, and the issue could not take as purchasers. But such are not the terms of the devise under consideration.

The terms are to the children for life, and, at their decease, " to the issue of them *and their heirs forever*." So that the precise question in this case is, whether the words italicized in the preceding sentence are sufficient to take the case out of the operation of the rule in *Shelley's Case*. It is not to be denied that there is no little conflict in the English cases upon this question ; but we think the authorities in this State conclusively show that where the word " issue " is so qualified by additional words as to evince an intention that it is not to be taken as descriptive of an indefinite line of descent, but is used to indicate a new stock of inheritance, the rule does not apply.

In *Myers* v. *Anderson*, 1 *Strobh. Eq.* 346, the testator gave certain slaves to his son for life, and at his death to be equally divided between his two daughters " during their natural lives," and after their death " to be the absolute property of the issue of their bodies forever." The court held that the daughters took only life-estates with remainder to their issue as purchasers. In this case the court uses the following language : " All the authorities agree that if the limitation be to the heirs of the body or issue, *and to their heirs*, this constitutes them purchasers, as it shows an intention to give them an estate not inheritable from the first taker, but an original estate, inheritable from themselves as a new stock of descent." It is true that this was a bequest of personal property, but as will be seen from the remarks of Dunkin, chancellor, in delivering the opinion of the Court of Errors in *McLure* v. *Young*, 3 *Rich. Eq.* 576, this principle was regarded as equally applicable to a devise of real estate.

In that case the devise was to the daughter of the testator for life, " and at her death I give, bequeath and devise the same absolutely and forever to her lineal descendants ; and in case she should die without lineal descendants (one or more) living at the time of her death, then it is my will that the whole of said real estate revert to my estate and be disposed of as hereinafter

directed." The daughter having died leaving a son, it was held
that the daughter took a life-estate with remainder to her son as
purchaser. In this case the doctrine laid down in *Myers* v.
*Anderson, supra,* was distinctly recognized and declared appli-
cable to real as well as personal estate, and the distinction
between this case and that of *Whitworth* v. *Stuckey, supra,* was
pointed out. In that case there were no additional words quali-
fying the term "issue," and hence it was there regarded as a
word of limitation, and the case fell within the rule in *Shelley's
Case;* but in *McLure* v. *Young,* as in *Myers* v. *Anderson,* there
were such additional words and hence those cases did not fall
within that rule.

It will be observed that the additional words in both *Myers*
v. *Anderson* and *McLure* v. *Young,* which were held to take
those cases out of the operation of the rule in *Shelley's Case,* were
not so strong as in the case now under consideration. In the
former the words were: " To be the absolute property " of the
issue, and in the latter " absolutely and forever," which the court
held were equivalent to a devise to the issue and their heirs ; and
these are the words used in this case.

In *Lemacks* v. *Glover,* 1 *Rich. Eq.* 141, there was a bequest
of personal property to the use of the testator's sister Jane, " and
after her death I give and bequeath the same to the heirs of her
body, to them, their heirs and assigns forever," and the court
held that the words " heirs of the body," which are stronger
words of limitation than the word " issue," were words of
purchase—one of the grounds of the decision being that the
additional words " to them, their heirs and assigns forever,"
evinced an intention that such heirs should take in their own
right as a new stock of inheritance and not successively and by
descent from the first taker. In support of this decision Dunkin,
chancellor, delivering the opinion of the court, in addition to
two English cases there cited, relied upon the case of *Dott* v.
*Wilson,* 1 *Bay* 452, where the bequest was to Sarah Dott " during
her life, (without the control of her husband,) and at her death
to the heirs of her body and their heirs and assigns forever ; but
if she should leave no issue, then to be disposed of as she should
think proper." In that case the court said : " That she [the

testatrix] did not mean or intend a perpetuity is obvious from her adding immediately after the words heirs of her body, '*and their heirs and assigns forever.*' That although the first words, ' heirs of her body,' unqualified and alone, would have made an estate-tail, yet the words superadded or engrafted on them make a joint tenancy, which is tantamount to share and share alike, and evidently shows she intended an equal distribution of the property among her grandchildren after her daughter's death." Chancellor Dunkin further remarks upon this case that " the decision of the court was made on the qualifying terms stated, although they thought that if any doubt existed on that clause it was removed by the language used ·in the proviso." In *Lemacks* v. *Glover,* Harper, chancellor, dissented upon another point, and commenced his dissenting· opinion in these words: " It seems hardly to be questioned that the words ' to the heirs of her body, to them and their heirs and assigns forever,' are to be regarded as words of purchase. In addition to the cases referred to by the chancellor, the cases of *Doe* v. *Laming,* 2 *Burr.* 1100, and *Luddington* v. *Kime,* 1 *Ld. Raym.* 203, are authority that after a devise to 'heirs of the body' or 'issue,' the superadded words 'and to his or their heirs' have the effect of converting the former into words of purchase.    *    *    * But in the present case it is plain that the words must be regarded as words of purchase only, and not words of limitation. The words of limitation are added—'their heirs and assigns forever'—denoting that the former words signify merely the persons who are to take in the first instance, and do not include any succession. The persons who are to take, are to take in fee or absolutely."

It will be observed that this distinguished chancellor, whose language has just been quoted, delivered the opinion of the court in *Whitworth* v. *Stuckey,* at the next succeeding term of the court, where he held that a devise to one for life, and at his death to his issue, there being no superadded words qualifying the term " issue," enlarged the estate given for life to the first taker to a fee-conditional, and that he soon afterwards concurred in the case of *Myers* v. *Anderson,* where the superadded words regarded as equivalent to the words "and to their heirs," had

the effect of converting the word "issue" from a word of limitation into a word of purchase. This shows that he recognized fully the distinction which we have drawn in this case.

It seems to us clear that the case now under consideration comes fully up to the test laid down by Sir William Blackstone in the famous case of *Perrin* v. *Blake,* as to whether the rule in *Shelley's Case* is to be controlled by the manifest intent of the testator. For this purpose, according to his opinion, two things must appear upon the face of the will : 1. "That the testator meant to confine the first taker to an estate for his life." 2. "That he meant to effectuate that intent by some clear and intelligent expression of a design to have the heirs of his son take by purchase and not by descent."

Now it is perfectly manifest that the first requirement of this test is met by the terms of the will now under consideration, for the testator has, in express terms, declared his intention that his children should take estates for their lives only. It is conceded, however, that this, by itself, would not be sufficient, and we must, therefore, be also satisfied that the second requirement is met—that is, that the testator has expressed clearly his design that those who are to take after the children are to take by purchase and not by descent. The language which he used is, "to the issue of them *and their heirs forever."* Now what does this language mean ? It cannot mean that the issue of the children are to take by descent, because, if that construction is placed upon it, then the result would be that the issue, if they could take at all, would take an estate in fee-conditional, while the language declares that the issue are to take in fee-simple, for it is clear that no more appropriate language could be used to create an estate in fee-simple in the issue than the language employed—to them *and their heirs forever.* Hence, to apply the rule in *Shelley's Case* to the devise under consideration would defeat both of the intentions of the testator, declared in express terms : 1. That the children should take estates for their lives only. 2. That their issue should take estates in fee-simple.

Applying the language used by Johnston, chancellor, in his Circuit decree in *Myers* v. *Anderson,* which is quoted with approbation in the opinion of the Court of Errors in *McLure* v.

*Young,* to this case, we may say, if obliged by the rules of law to extend the interests of the children of the testator, which are expressly declared to be for life only, to estates in fee-conditional, or practically in fee-simple—all of them having had issue born— and to declare that the interest which is given to their issue expressly in fee-simple is no interest at all—that the absolute property is not in the issue to whom it *is given,* but in their parents, to whom it is *not given,* but, on the contrary, from whom it is expressly withheld; if we are required by the rule, in *Shelley's Case,* to do this, we should feel that we were sacrificing the intention of the testator, as to which there can be no mistake. But no such unpleasant alternative is presented to us, for, as we have shown, without infringing the rule in that celebrated case, and only recognizing an exception to it, which is well settled by the authorities in this State, we are at liberty to construe this will in accordance with what every one who reads it must believe to have been the intention of the testator.

As to the second ground of appeal, it is not clear that the Circuit judgment is open to the objection therein taken. That judgment determines that the children of the testator take an estate for their lives only, with remainder to their children in fee, and directs that the interest be paid to the life-tenants annually, and then concludes in these words: "The *corpus* to be paid to the tenants-in-fee, or their guardians, as the life-estates determine," and it is argued that as the life-estates preceding the remainders secured to the defendants, Richard H. and Archibald McIntyre, had already fallen in, the words "to be paid   *   *   *   as the life-estates determine" might leave it doubtful whether these parties could receive what they are now entitled to in fee. While the language used might afford room for some doubt, we think the intention is that those who are adjudged to be entitled in fee are entitled to receive their shares whenever it is ascertained that the precedent life-estates have fallen in, whether that occurs before or after the rendition of the judgment in the Circuit Court.

The judgment of this court is that the judgment of the Circuit Court, as herein construed, be affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.